UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim No. 13-CR-10292-MLW |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ROBERT BURTON | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The government submits this memorandum to supplement its prior sentencing memorandum, to update to the Court on recent developments regarding the plea agreement in this matter, and to advise the Court of the government's sentencing recommendation. As the parties agree, the defendant has breached the plea agreement, first through his recent violation of his conditions of release and then by refusing to make a restitution payment in advance of sentencing. As a result, and based on the plain language of the agreement, the government is released from its obligations under the agreement. Moreover, and after discussion with defense counsel as to how to proceed, the U.S. Attorney has exercised her right to void the agreement, thereby releasing the defendant from his obligations as well. The government understands, however, that the defendant does not intend to withdraw his guilty plea and also is prepared to proceed with sentencing, as scheduled, on December 22.

In light of the foregoing, the government recommends a sentence of 37 months incarceration, to be followed by a term of three years supervised release, restitution in the amount of $159,500 to the victims, restitution of $271,640 to the Internal Revenue Service, a fine of $7,500 and a special assessment of $1,100.

## BACKGROUND

### I.     The Plea Agreement

As the Court is aware, in August 2014, the parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), pursuant to which they agreed that the defendant would, among other things, make certain minimum restitution payments to the victims at or before sentencing and the government would recommend no more than 24 months in prison, which represented a variance of the agreed-upon Guideline Sentencing Range ("GSR"). See Plea Agreement, Dkt. No. 84, ¶5. The plea agreement also included the following provisions, among others:

Paragraph 4:  In addition to stating the parties' agreement with regard to the application of the United States Sentencing Guidelines ("USSG"), paragraph 4 lists a variety of circumstances in which the U.S. Attorney "at her sole option" could be released from her commitments under the agreement, including but not limited to if, after the execution of the agreement, the defendant intentionally violates any condition of release. See Paragraph 4(g).

Paragraphs 13 and 14:  Paragraphs 13 and 14, which address "Withdrawal of Plea by Defendant or Rejection of Plea by Court" and "Breach of Agreement," permit the U.S. Attorney to declare the Agreement null and void in the event that the defendant moves to withdraw his

guilty plea or the Court rejects any aspect of the agreement and further permits the U.S. Attorney to be released from her obligations under the agreement if the defendant breaches the agreement in any way, including by violating a condition of his pre-trial release.

### II.     August 21, 2014 Plea Colloquy

On August 21, 2014, the Court conducted a plea colloquy and reviewed each of the factors set forth in Fed. R. Crim. P. 11(b).  See August 21, 2014 Tr. ("Plea Tr."), 8-25.  In accordance with the procedures set forth in Fed. R. Crim. P. 11(c)(3)(A), and with the agreement of the parties, the Court accepted the guilty plea but deferred acceptance of the plea agreement until the time of sentencing.  Plea Tr. at 3, 7, 25.  Lastly, in accordance with Fed. R. Crim. P. 11(c)(4) and (5), and as provided in paragraph 3 of the plea agreement itself, the Court informed the defendant that, at the sentencing hearing, the Court would decide whether to impose a sentence within the agreed-upon range, and advised the defendant that, if the Court did not intend to impose a sentence within the agreed-upon range, the defendant would have the opportunity to withdraw the guilty plea.  Plea Tr. at 7-8.

### III.    Post-Plea Conduct

On September 30, 2014, the day that the defendant was due in bankruptcy court to address his non-compliance with Jude Boroff's Order requiring that Burton make disgorgement payments to certain of his bankruptcy clients ("May 2013 Order"), see Exhibit A attached hereto (referencing May 2013 Order), the defendant also failed to comply with his Court-imposed curfew.  Specifically, Burton, who wore an electronic monitoring device, failed to return home by midnight, as required.  Having been alerted through the electronic monitoring system, the Pre-

Trial Services Officer attempted to contact Burton and also contacted his third-party custodian who was unaware of Burton's whereabouts.  At that point, a warrant was issued for Burton's arrest.  When Burton eventually did make contact with the Pre-Trial Services Officer that night, Burton initially attempted to mislead the Officer, claiming that he had fallen asleep on his own couch at home.  Only after further inquiry from the Officer did Burton admit that he had been at a friend's house.

Later that day, and before the warrant had been executed, Burton appeared in bankruptcy court.  Judge Boroff found Burton, who had failed to make any of the payments required by the May 2013 Order, in contempt of court and ordered him detained.  See Exhibit A.  The next day, Burton appeared before Chief Magistrate Judge Boal for a detention hearing in this case and, two days later, Chief Magistrate Judge Boal issued an Order of Detention ("Detention Order").  See Dkt. No. 101.  Among other things, the Detention Order noted the defendant's history of non-compliance with his conditions of release and his repeated efforts to mislead Pre-Trial Services.

On November 19, 2014, Judge Boroff lifted the bankruptcy court's detention order and scheduled a further hearing on civil contempt of his May 2013 Order for January 2015.  In lifting the detention order in that case, Judge Boroff noted that "the payments set forth in this Court's May 29, 2013 Judgment and Orders have still not been made."  See Exhibit B, attached hereto.

On December 3, 2014, Burton filed a Motion for Reconsideration of the Detention Order ("Motion").  Dkt. No. 109.  In that Motion, which the government opposed, see Dkt. No. 110, Burton claimed that he had amassed $27,000 but further claimed that it would be impossible for him to raise the full $50,000 minimum required under the plea agreement unless he were

4

released from custody prior to sentencing. At a December 12, 2014 hearing, Chief Magistrate Judge Boal heard argument on Burton's Motion. In that hearing, defense counsel advised that, if he were released from custody, Burton claimed that he could sell a variety of assets, including his car and some artwork, to raise the additional $13,000 needed to satisfy his restitution obligations under the plea agreement. Later that same day, Chief Judge Magistrate Judge Boal issued an Order denying Burton's Motion. See Dkt. No. 118.

### IV.  The U.S. Attorney's Decision to Void the Agreement

On Tuesday, December 16, 2014, defense counsel contacted the government and informed the undersigned Assistant U.S. Attorney that Burton would not be making any portion of the restitution payment required under the plea agreement. At that time, both defense counsel and the government agreed to review the agreement and consider various options as to how best to proceed.

On Wednesday, December 17, 2014, the government conferred with defense counsel several times. Defense counsel stated that he and the defendant agreed that the defendant was in breach of the plea agreement in light of his failure to comply with his conditions of release and also in light of his failure to make the required restitution payment. Defense counsel further informed the government that the defendant did not intend to withdraw his guilty plea, but preferred to persist in that plea and continue with the sentencing hearing as scheduled on December 22. After further consultation with defense counsel, the government sent defense counsel an e-mail advising counsel that the U.S. Attorney was exercising her right to declare the agreement null and void. See Exhibit C, attached hereto.

**PROPOSED PROCEDURE**

In light of the foregoing, the government proposes the following procedure for the hearing on December 22.  At this point, the parties agree that the defendant has breached the agreement, thereby releasing the government from its obligations under the agreement.  See Defendant's Sentencing Memorandum ("Defendant's Memorandum" or "Def. Mem."), Dkt. No. 119, at 6; Plea Agreement, ¶14.  The U.S. Attorney also has declared the agreement null and void, thereby releasing the defendant from his obligations under the agreement.  See Plea Agreement, ¶13.  Indeed, recognizing that, in his Sentencing Memorandum, the defendant recommends a sentence of incarceration but does not recommend that the Court Order any up-front restitution payment, as contemplated by the joint recommendation in the plea agreement.  That said, given the wording of paragraphs 13 and 14, the government is further recommending that the Court reject the plea agreement.[1]  If the Court decides to reject the agreement, and in accordance with Fed. R. Crim. P. 11(C)(5), the government recommends that the Court conduct the colloquy set forth therein, advising the defendant of the Court's rejection of the agreement, providing the defendant with an opportunity to withdraw his plea, and advising the defendant

---

[1] The government recognizes that paragraph 13 permits the U.S. Attorney to void the agreement if the defendant seeks to withdraw his guilty plea or if the Court rejects the agreement. Likewise, paragraph 14 releases the government, but not the defendant, from his obligations under the plea agreement where the defendant has breached.  Read together, these provisions may allow the government to void the agreement in these circumstances.  United Statse Okoye, 731 F.3d 46, 49 (1st Cir. 2013) (plea agreements, like contracts, should be construed to give effect to every term and phrase); United States v. Bermudez, 407 F.3d 536, 540 (1st Cir. 2005) (plea agreements are interpreted under principles of contract law).  And, in any event, voiding the agreement creates a benefit to the defendant by also releasing him from his obligations under the agreement.  Indeed, as set forth above, the defendant, like the government, is recommending a sentence than differs from the joint recommendation contemplated by paragraph 5 of the plea agreement.

that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Again, it is the government's understanding that the defendant does not intend to withdraw his guilty plea. Under these circumstances, and in light of the thorough plea colloquy conducted on August 21, the Court may not need to conduct further colloquy beyond that set forth in Fed. R. Crim. P. 11(C)(5). Indeed, as set forth above, on August 21, the Court reviewed all of the matters set forth in Fed. R. Crim. P. 11(b), which are the same matters that must be reviewed regardless of whether the defendant is tendering a guilty plea pursuant to Rule 11(c)(1)(C) or not.

## GOVERNMENT'S SENTENCING RECOMMENDATION

As set forth above, the government recommends a sentence of 37 months incarceration, to be followed by a term of three years supervised release, restitution in the amount of $159,500 to the victims, restitution of $271,640 to the Internal Revenue Service,[2] a fine of $7,500 and a special assessment of $1,100. This obviously is different from the sentence contemplated in the plea agreement, but the circumstances are very different from those present when the parties negotiated the agreement in August. In addition to the defendant's breaches, the defendant has proven himself unwilling to comply with orders of this, and other, Courts and unwilling to make any real attempt to repay his victims.

---

[2] In the plea agreement, and again in its original Sentencing Memorandum, the government calculated the restitution to the IRS to be $278,132. The government, however, was mistaken in that calculation. The government provided detail on the tax loss to the Probation Office, which correctly calculated the restitution owed to the IRS to be $271,640.

As an initial matter, the recommended term of 37 months imprisonment is the middle of the GSR if the defendant were a criminal history category of I and at the low end of the range as calculated by the Probation Office because the defendant falls within criminal history category II. As set forth in its original Sentencing Memorandum, Dkt. No. 111 ("Sentencing Memorandum" or "Memorandum"), the defendant's criminal history category II arguably overstates his culpability here as the two crimes at issue—an OUI offense for which defendant was being supervised when committing the fraud offenses in this case—are totally unrelated. See Sentencing Memorandum at 15. Thus, while the government agrees with the Probation Office's calculation of the defendant's criminal history, the government is recommending a sentence at the low end of that range and in the middle of the range applicable if the defendant were a criminal history category I.

In light of the defendant's conduct not just before, but since, his agreement to plead guilty, a sentence of 37 months in prison is sufficient but no greater than necessary to reflect the seriousness of the crime, provide just punishment, and provide adequate deterrence. At this point, the defendant has flouted the orders issued by the Bankruptcy Court and Chief Magistrate Judge Boal. Indeed, according to Judge Boroff's most recent order, the defendant has yet to pay restitution owed as of May 2013. Now, although he allegedly has amassed $27,000 to repay his victims in this case, he has refused to do so. Nor does it seem that he has made any real effort to make those payments. Although two of his friends were sitting in the courtroom during the most recent detention hearing on December 12, Burton argued that he could amass the additional $13,000 to pay restitution only if he were released. In other words, he was willing to pay

restitution only if it got him out of jail. Burton stole from his friends and neighbors and is now refusing to repay them anything, even though he claims to have substantial assets at his disposal. This type of callas behavior is telling and demonstrates why a significant term of imprisonment is necessary in order to punish this defendant.

Likewise, it appears that a significant term of imprisonment is necessary to deter him. In its initial Sentencing Memorandum, the government focused on the importance of keeping the defendant out of the financial industry and from preventing him from victimizing others in the future. Those arguments are still relevant. In addition, however, the defendant's refusal to live up to any obligation—whether it be an obligation to abide by a court order or a contractual obligation to repay his victims—demonstrates that this defendant needs to be incarcerated for some time to be deterred from future criminal behavior. Indeed, the defendant was incarcerated for two months at the outset of the case because of, among other things, his misrepresentations to Pre-Trial Services. Even after Chief Magistrate Judge Boal released him on strict conditions, he promptly violated them, and then, in September, after pleading guilty, he went back to his old ways in attempting to mislead Pre-Trial Services. This defendant does not seem to get it. He does not take his obligations seriously and only a significant term of incarceration will deter him from such conduct in the future.

Lastly, this defendant's sentence must send a strong deterrent message more generally. Again, the defendant has ignored one court order after another and now has violated his agreement to repay his victims. The sentence must send a message to all defendants, not only that criminal conduct will not be tolerated, but also that a refusal to abide by court orders and a

refusal to repay victims, despite an ability to do so, also will be punished.

## VICTIMS

Pursuant to its statutory obligations, the government has notified the victims of the various developments in the case and the upcoming hearing.  The government expects three victims to attend the sentencing hearing and some have expressed a desire to address the Court.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court (1) find the defendant in breach of, and reject, the plea agreement; and (2) assuming the defendant does not withdraw his guilty plea, impose a sentence of 37 months incarceration, to be followed by a term of three years supervised release, restitution in the amount of $159,500 to the victims, restitution of $271,640 to the Internal Revenue Service, a fine of $7,500 and a special assessment of $1,100.

Respectfully submitted,

CARMEN M. ORTIZ

By:    */s/ Sarah E. Walters*
       Sarah E. Walters
       Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 18, 2014

*/s/ Sarah E. Walters*
SARAH E. WALTERS

10