EXHIBIT A

TRULINCS 95502038 - BURTON, ROBERT - Unit: FTD-E-B

---

TO: 95502038
SUBJECT: Oscar- 11/11/14

From: Oscar Cruz [mailto:Oscar_Cruz@fd.org]
Sent: Tuesday, November 11, 2014 11:13 AM

Subject: Re:Update

███████, I will make every effort to see Robert on Friday. A few points to relay to him if you talk to him before Friday. The terms of the plea agreement are fixed and can no longer be "negotiated". The ability to make amendments ended when he signed the agreement and it was filed with the court. On another note, we really can't do anything concerning his detention status on the federal case until Boroff lifts the contempt order. Even then, the government's position will be that he remain in custody until sentencing. They want the court to impose a term of imprisonment when the sentencing hearing takes place so they prefer that he remain in custody until then. On a positive note, every day Robert is in custody will be credited toward whatever sentence he does get. With the 4 months or so that he was in custody when the case started, he has now added another month or so. That is 5 months of credit.

Sent from IBM Notes Traveler

From: ███████

To:    "Oscar Cruz" <Oscar_Cruz@fd.org>

Date:  Mon, Nov 10, 2014 6:04 PM
Subject:    Update

---

Good Evening Mr. Cruz
I would like to keep you updated on some correspondence that we received from the bankruptcy court today. We expect to have the contempt lifted this week. Borroff requested some documents from NER that we will be getting to him tomorrow.

Robert, will also like to see if we can negotiate with the prosecutor terms for the plea agreement, to either allow him to get released to pay back restitution or expedite the sentencing hearing so that he can work on paying back the restitution. We called you tonight where he left you a voicemail stating what he is looking to suggest to the Prosecutor to seek resolution. Please let me know your thoughts on this and if he can still plan on your visit this Friday?

Thank you again for your attention to this matter,

TRULINCS 95502038 - BURTON, ROBERT - Unit: FTD-E-B

---

TO: 95502038
SUBJECT: OSCAR 11/11/14- 3

From: Oscar Cruz [mailto:Oscar_Cruz@fd.org]
Sent: Tuesday, November 11, 2014 4:28 PM

Subject: RE: Re:Update

▬▬▬et me reiterate that we cannot revoke or amend the plea agreement. I will repeat this to Rob when I see him. This is a contract whose terms bind the parties that sign off on it. I would not have advised Rob to include a term obliging him to pay a specific amount of restitution by the sentencing date if he was not financially capable of doing it. He assured me repeatedly that this would not be a problem. My assumption was that he had the money prior to being taken into custody. If that is not the case and he can only pay a lesser amount due to his currently being in custody, I can see if the government will give him some breathing room on that issue.

Sent from IBM Notes Traveler

From: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

To:   "Oscar Cruz" <Oscar_Cruz@fd.org>

Date:  Tue, Nov 11, 2014 4:14 PM
Subject:    RE: Re:Update

---

Hi Oscar-
I just spoke to Robert, and he is most concerned with not having the 50K before the sentencing hearing. He would like to know what are the plans to revoke or amend the plea agreement?

From: Oscar Cruz [mailto:Oscar_Cruz@fd.org]
Sent: Tuesday, November 11, 2014 11:47 AM

Subject: RE: Re:Update

I can certainly bring Robert's request to the government but he needs to understand what the prosecutor's mindset is here. The first priority for them is that Robert be sentenced to a term of imprisonment at the high end of the range suggested in the plea agreement (24 months). The second priority is payment of restitution. To them, it would make no sense to agree to his release prior to sentencing if they are ultimately going to ask that he go back into jail. Rob's argument is more for Judge Wolf. We can appeal to him at sentencing to impose the low end of the range (12 months). That time can be broken up into time in jail and time on home confinement. By the time Rob sees Judge Wolf for sentencing, he will already have 6 months credit toward the 12 months. The remaining 6 can theoretically be served in home confinement if J. Wolf agrees that he should be out and working to pay restitution instead of sitting in jail.

Sent from IBM Notes Traveler
Gonzalez, Tiesha --- RE: Re:Update ---

TRULINCS 95502038 - BURTON, ROBERT - Unit: FTD-E-B

--------------------------------------------------------------------------------

TO: 95502038
SUBJECT: OSCAR- Sentencing Hearing Instructions 12/2/14

---------- Forwarded message ----------

Date: Tue, Dec 2, 2014 at 9:24 PM
Subject: Re: Post Visit Followup
To: Oscar Cruz <Oscar_Cruz@fd.org>


(This is Robert on the phone with me)

"Oscar, please proceed as I have instructed you previously,

1: make bail and make all the arguments to the court on why I should be released, pending plea agreement, no flight risk, no danger to the community.

This is not that difficult. We've had 15 days since J.Borrof has lifted the contempt.


2: please begin to prepare for the scheduled sentencing hearing for Dec 22.

This means we will challenge the governments offense level moreover of the loss amount of the parties. The first step should be obtaining the bank statements from the government of Larry Coleman and Ariel Castillo.


Finally, If in the event that I am released I will do the best I can with coming up with as much money as possible for the sentencing hearing. If I am not released I expect you to visit me in Wyatt for several days to prepare for the hearing.


Oscar; this ordeal has gone on for four years. I am not even the same person I was four years ago.. This ordeal ends on December 22nd. Thank you in advanced."






On Dec 2, 2014, at 6:08 PM, Oscar Cruz <Oscar_Cruz@fd.org> wrote:

TRULINCS 95502038 - BURTON, ROBERT - Unit: FTD-E-B

----------------------------------------------------------------------------------

TO: 95502038
SUBJECT: OSCAR- Instructions on Bail/ Bankstatements 12/02/14
DATE: 03/23/2015 12:06:06 PM

---------- Forwarded message ----------
From: Oscar Cruz <Oscar_Cruz@fd.org>
Date: Tue, Dec 2, 2014 at 10:28 PM
Subject: Re: Post Visit Followup

I don't understand what these bank records will prove? Rob admitted to the offense conduct and the loss amount is determined by summing up the amount of money that each "investor" initially gave him. Any arguments about money that may or may not have been repaid go to the issue of the restitution amount. Alleging that Coleman or any of the others are lying about monies being repaid is not a good strategy.

Sent from IBM Notes Traveler


---- Re: Post Visit Followup ---


To: "Oscar Cruz" <Oscar_Cruz@fd.org>
Date: Tue, Dec 2, 2014 10:15 PM
Subject: Re: Post Visit Followup




Still on the phone with Rob,

"thanks for the update Oscar, please request the bank statements from the government and start to prepare for 12/22. Thanks again."



On Dec 2, 2014, at 10:11 PM, Oscar Cruz <Oscar_Cruz@fd.org> wrote:



I really think this is a mistake but it is your choice. The below guideline range bargained for in the agreement will be lost to us and now we are going to have to fight harder to get back to a position we had already secured in writing. Lastly, if Rob's suggested arguments about the loss amount smack of backpedaling on the plea or wavering on acceptance of responsibility, Wolf will have a field day and be merciless.

Sent from IBM Notes Traveler

TRULINCS 95502038 - BURTON, ROBERT - Unit: FTD-E-B

--------------------------------------------------------------------------------

TO: 95502038
SUBJECT: OSCAR- 12/16/14 3

-----Original Message-----
From: Oscar Cruz [mailto:Oscar_Cruz@fd.org]
Sent: Tuesday, December 16, 2014 6:29 PM

Subject: RE: Voicemail

Robert has to choose one of the following two options and I will explain the pros and cons of each one. If Robert wants to go forward with sentencing on Monday, I am NOT going to argue that this investment advisor enhancement does not apply. We already waived that argument when Robert signed a plea agreement with the government indicating he was in agreement that it DID apply. We cannot resuscitate that now. In addition, I don't believe there is a good faith factual basis for making such an argument.
The cases Robert cited to me are on point. Although Regensberg, 635 F.Supp. 2d 306 (2009) is arguably helpful because it states the defendant in that case was not an "investment advisor" because he "did not receive compensation in return for the business of providing advice, to others...Rather, he was to receive a percentage of the profits, if any, that an investor garnered from his or her investment", there is no great detail given about exactly what the defendant in that case actually did with the victims. I therefore can't compare that situation to Robert's in any great detail. More importantly, the Onset case which Robert also cited to me is not helpful to him as it distinguishes Regensberg and states that the Second Circuit has already decided that a portfolio manager for hedge funds who managed the investor's money in return for a percentage of the profit by directing the fund to purchase and sell securities falls within the definition of "investment adviser". See U.S. v. Onset, 2013 WL 789182 (2013). Here is some more damaging language from Onset in
comparing that defendant to the one in Regensberg: "there is little description of the defendant's conduct in that case and no analysis as to why a percentage of profits cannot be considered 'compensation' under the Investment Adviser's Act of 1940". The Onset court found that take a percentage of the profits was sufficient to apply the enhancement.
Therefore, the argument can and would be made that Robert's agreement to take a percentage of the profits from the investments of Coleman, Hannan, Vozella, etc., is comparable to what was happening in Onset with the hedge fund portfolio manager. The other thing that would happen in challenging this enhancement is that if Robert tried to back his arguments with bank records, etc., from the government, they would be forced to bring in Coleman, Hannan, Vozella, as witnesses to tell Judge Wolf exactly what their understanding was about their arrangements with Robert. Wolf will be livid if these "victims" are forced to come in to testify because Robert is challenging an enhancement he already gave up and that there is no strong argument behind it. I cannot support this strategy.

The next issue is that if we go back and forth with the government about why Robert failed to meet his restitution obligation, Bryan Ganz and NER will be brought into the mix. I understand Robert is ready to challenge whatever accusations Bryan would make but he needs to understand that I, his attorney, could be placed in a position where I'd be called to support his claims. Bryan called me and asked me how he could be relieved of the third party custodian obligation. He also volunteered the information about the unauthorized use of the credit card and the recruitment of employees to start a competing business. If I cross examine him about this stuff all he has to say is "I told you about it in detail". This puts me in a terrible position and will damage Robert's case.

This is a long winded way of saying, either Robert does this my way, i.e.
not arguing this enhancement and avoiding a confrontation with Ganz, or he can ask that I withdraw from the case. He should understand that if he does ask that I withdraw, Wolf will dig into the reasons why and all of this stuff will be exposed anyway. It is up to Robert.

Robert has a second option if he wants to go this route. Federal Rule of Criminal Procedure 11(d)(1) states that a defendant can withdraw a plea of guilty or nolo contendre before the court accepts the plea, for any reason or no reason. If Robert wishes, I can notice the Court that Robert is withdrawing his plea because under 11(c)(1)(C) (binding plea agreement provision), the judge has yet to "accept" it. If I do this and it is successful, Robert would be able to go to trial. What will likely happen in this scenario is that the government will argue that Robert can't withdraw his plea under the language quoted in the plea agreement in paragraph 14. My counter-argument is that the language of the plea agreement is inconsistent with Rule 11 which takes precedence and states the defendant can withdraw his plea before acceptance. In any event, Wolf would not proceed with sentencing if this happens and he will have us brief this issue Ad Nauseum. Please understand that if Wolf

**TRULINCS 95502038 - BURTON, ROBERT - Unit: FTD-E-B**

---

ultimately allows withdrawal of the plea, Robert will continue to be held in custody until whenever a trial date is scheduled. It could be for a significant period of time given Wolf's schedule..

So it is up to Robert, go my way on these sentencing issues or ask me to withdraw. We can't be at odds on legal strategy and have Robert arguing one thing and me arguing another. I also can't and will not put myself in the position of being a witness against Robert on the Bryan Ganz issues.

His other choice is to have me notice the court that he wants to withdraw his plea. Up to him but please let me know his choice immediately as I have to notify the court either way ASAP.


Oscar Cruz, Jr.
Assistant Federal Defender
51 Sleeper Street, 5th Floor
Boston, MA 02210
office: (617) 223-8061
fax:    (617) 223-8080