UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT BURTON,                    )
    Petitioner,                  )
                          )
                          )
       v.                        )
                          )
UNITED STATES OF AMERICA,         )   Cr. No. 13-10292-MLW
    Respondent.                  )
                          )
                          )
                          )
                          )

MEMORANDUM AND ORDER

WOLF, D.J.                                    October 16, 2020

I. INTRODUCTION

Defendant Robert Burton pled guilty to securities and tax fraud on August 21, 2014. On December 22, 2014, he was sentenced to serve 48 months in custody and 3 years of supervised release. See Dkt. No. 125 (Judgment).

On April 20, 2015, Burton filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Dkt. No. 132), which he subsequently amended. The amended §2255 Petition was filed on May 19, 2015. See Dkt. No. 137 (the "Petition"). A memorandum in support was filed on June 15, 2015. See Dkt. No. 139 ("Mem. in Supp. Petition"). The government opposes the Petition.

As discussed in this Memorandum, many of the "facts" that Burton alleges are conclusively refuted by the records of this

case. The true facts and the knowledge this court obtained presiding in Burton's case demonstrate that Burton's contention that his counsel, Oscar Cruz, Esq., was ineffective is without merit. Burton's other claims are both defaulted and also without merit. Accordingly, it is not necessary or appropriate to conduct an evidentiary hearing on Burton's claims. The Petition is being denied. A Certificate of Appealability is being denied as well.

II.    FACTUAL AND PROCEDURAL BACKGROUND

Burton was indicted on October 3, 2013. See Dkt. No. 21. On February 13, 2014, a Superseding Indictment was returned. See Dkt. No. 53. On August, 14, 2014 a Second Superseding Indictment was returned. See Dkt. No. 77. The Second Superseding Indictment charged Burton with three categories of offenses: (1) securities fraud associated with funds invested with him (Counts 1-5); (2) procuring false tax returns (Counts 6-7); and (3) subscribing false tax returns (Counts 8-11). The tax charges concern the preparation of false tax returns by Burton for both clients and for himself.

These charges arose out of Burton's conduct in running a financial services business originally located in Boston and then in Lawrence, Massachusetts. Although the business had multiple names, it was generally referred to as "Pinnacle". Through Pinnacle, Burton provided tax preparation, loan modification, debt consolidation, investment advising, and bankruptcy petition preparation services. During some of the period relevant to this

case, Burton had between eight and ten employees assisting him at Pinnacle.

Burton's scheme to defraud investors involved interactions with Ariel Castillo, Larry and Miriam Coleman (together, the "Colemans"), Sean Hannan, and Edward Vozella. In essence, Burton, made various misrepresentations to obtain funds from these individuals. More specifically, Burton told them he would invest their money. However, no such investments were made. Rather, Burton used much of the money for personal purposes. The tax charges relate to Burton's preparation of false returns for the Colemans, and Ramon and Brenda Tejada, as well as Burton's own tax returns.

On August 19, 2014, Burton and the government entered into a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). See Dkt. No. 84 at 2. Burton agreed to plead guilty to all counts of the indictment and waived his right to appeal if the agreement were accepted by the court. See id. at 1, 6. On August 21, 2014, the court accepted Burton's plea of guilty and deferred until sentencing deciding whether to accept or reject the binding plea agreement. See Dkt. No. 87.

Before the sentencing hearing, however, Burton breached the plea agreement by failing to pay as promised restitution of at least $50,000, and by violating the curfew which was a condition of his release and lying to the Probation Officer about that. See Dkt. No. 120 at 1-3; Dec. 22, 2014 Tr. (Dkt. No. 173) at 4. The

government informed the defendant that it was exercising its option to be released of its obligations under the plea agreement. It recommended that the court conduct the colloquy required by Rule 11(c)(5) when a binding plea agreement is rejected and, among other things, provide the defendant with the opportunity to withdraw his plea. See Dkt. No. 120 at 4-7. In his sentencing memorandum, the defendant acknowledged his breach of the plea agreement and stated that he did not intended to withdraw his guilty plea. See Dkt. No. 119 at 6.

At the sentencing hearing on December 22, 2014, the court conducted a Rule 11(c)(5) colloquy with Burton and afforded him the opportunity to withdraw his guilty plea. Burton again declined to do so. See Dec. 22, 2014 Tr. (Dkt. No. 173) at 4.

Burton was sentenced to 48 months of imprisonment, 3 years of supervised release, and restitution in the amount of $159,500 to named victims, a fine of $7,500, and $1,100 special assessment. See Dkt. No. 125. Burton appealed, but too late. On September 14, 2015, the First Circuit dismissed Burton's appeal. See Dkt. No. 151.

On April 20, 2015, Burton, appearing pro se, filed his first Petition. See Dkt. No. 132. On May 19, 2015, Burton filed an amended petition. See Dkt. No. 137. On June 15, 2015, Burton filed a memorandum in support of the amended Petition, see Dkt. No. 139, and a supplemental memorandum shortly thereafter, see Dkt. No.

4

141. He subsequently filed multiple affidavits in support of his request for relief. See Dkt. Nos. 146, 149, 152, 153, 180. Burton also filed motions for discovery, see Dkt. Nos. 130, 142, 143, and, as ordered by the court, received some from Mr. Cruz. See Dkt. No. 180. The record also includes replies filed by Burton in response to the government's opposition memoranda. See Dkt. Nos. 197, 210.[1]

The Petition alleges 16 grounds to vacate the judgment. Grounds 1-9 allege ineffective assistance of counsel. See Dkt. No. 137 at 4. Ground 10 alleges that the government failed to provide the defendant with certain material exculpatory evidence. Ground 11 alleges that a victim's statement at the sentencing hearing constitutes newly discovered evidence that negates the government's allegations that Burton engaged in securities and tax fraud. Grounds 12-16 allege errors by this court. More specifically, Burton alleges that the court failed to inform him of the maximum fines, restitution, or supervised release, in violation of Federal Rule of Criminal Procedure 11(b)(1)(H); failed to inquire and confirm at the sentencing hearing that the

---

[1] In addition, Burton filed a Motion for a New Trial (Dkt. No. 156) and a Motion to Amend the Sentence and Correct the Restitution Amount (Dkt. No. 162). These motions were denied. See Dkt. No. 169.

petitioner had discussed the Presentence Report with his counsel
and that it was accurate, in violation of Federal Rule of Criminal
Procedure 32; abused its discretion by sentencing the petitioner
above the Guidelines range; failed to state reasons for its upward
departure; and failed to provide the petitioner with sufficient
notice that the court would reject the binding plea agreement and
sentence him to an above-guidelines sentence.

On April 20, 2017, the government filed a partial opposition
to the Petition, addressing Grounds 10-16 and some of the
ineffective assistance of counsel claims. See Dkt. No. 185.[2]
However, it asserted that it was unable to respond to most of
Burton's claims of ineffective assistance without more information
from his attorney, Mr. Cruz. See id. at 2. The court then ordered
the Bureau of Prisons to report whether Burton was "being evaluated
or treated for any condition that may affect his capacity to
knowingly waive his attorney-client privilege." See Dkt. No. 190.

On May 18, 2017, in view of a response by Burton filed on May
1, 2017, and declarations filed by the government from both the
clinical director and chief psychologist of FMC Devens, the court
held that Burton had knowingly and voluntarily waived his attorney-
client privilege with respect to any communications with Mr. Cruz

---

[2] The partial opposition was subsequently re-docketed on May 1,
2017. See Dkt. No. 196.

6

that are relevant to the Petition and ordered Mr. Cruz to make the disclosures discussed in a March 24, 2017 Order. See Dkt. No. 203 at 5. In addition, the court ordered that the government respond to the remaining claims in the Petition; denied Burton's motion for an expedited evidentiary hearing and his request for an order requiring the Bureau of Prisons to place him in a Residential Re-entry Center or in home confinement until the Petition was resolved; and denied his motion for a "show cause hearing." Id. at 7-8. The court stated that it would decide whether an evidentiary hearing was necessary after Mr. Cruz submitted the required affidavit and the government briefed the issues raised in the Petition. See id. at 6.

On May 4, 2017, Burton filed a brief reply to the government's initial response to the Petition. See Dkt. No. 197. On June 13, 2017, Burton filed a more substantial reply. See Dkt. No. 210. On June 23, 2017, the government responded to Burton's nine claims of ineffective assistance of counsel. See Dkt. No. 212. On July 3, 2017, Burton replied to that response. See Dkt. No. 213. On August 18, 2017, Mr. Cruz submitted an affidavit as ordered by the court. See Dkt. No. 208 ("Cruz Affidavit 1"). In response to Burton's Reply, Mr. Cruz submitted a second affidavit, see Dkt. No. 214 ("Cruz Affidavit 2"), to which Burton subsequently responded, see Dkt. No. 216. The government then filed responsive memoranda, supplemented by sealed exhibits. See Dkt. Nos. 218, 219.

III.   REVIEW UNDER 28 U.S.C. §2255

A. Standard Applicable to a Pro Se Petitioner

Where, as here, a petitioner is acting pro se, his petition

must be "'liberally construed . . . [and] a pro se complaint,

however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers.'" Erickson v.

Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429

U.S. 97, 106 (1976)).

B. Standard for an Evidentiary Hearing

When a prisoner files a petition under 28 U.S.C. §2255, the

court may either summarily dismiss the claim or grant an

evidentiary hearing to determine if it is meritorious. 28 U.S.C.

§2255(b) provides:

> Unless the motion and the files and records of
> the case conclusively show that the prisoner
> is entitled to no relief, the court shall
> cause notice thereof to be served upon the
> United States attorney, grant a prompt hearing
> thereon, determine the issues and make
> findings of fact and conclusions of law with
> respect thereto.

28 U.S.C. §2255(b).

The First Circuit elaborated the test for granting an

evidentiary hearing in a §2255 proceeding in United States v.

McGill, 11 F.3d 223 (1st Cir. 1993). As the First Circuit wrote:

> When a petition is brought under section 2255,
> the petitioner bears the burden of
> establishing the need for an evidentiary
> hearing. See Mack v. United States, 635 F.2d

8

20, 26-27 (1st Cir. 1980); <u>United States v. DiCarlo</u>, 575 F.2d 952, 954 (1st Cir. [1978] ), cert. denied, 439 U.S. 834 (1978). In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.

We have distilled these principles into a rule that holds a hearing to be unnecessary "when a §2255 Petition (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." <u>Moran v. Hogan</u>, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§2255 Petition may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" <u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir. 1984) (citations omitted).

<u>Id.</u> at 225-26 (some citations omitted); <u>see also</u> <u>United States v. Panitz</u>, 907 F.2d 1267 (1st Cir. 1990). "Moreover, when . . . a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." <u>McGill</u>, 11 F.3d at 225.

C. <u>Standard for Procedural Default</u>

The First Circuit has stated that:

> A significant bar on habeas corpus relief is imposed when a prisoner did not raise claims at trial or on direct review. In such cases, a court may hear those claims for the first time on habeas corpus review only if the petitioner has "cause" for having procedurally defaulted his claims, and if the petitioner suffered "actual prejudice" from the errors of which he complains.

Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007) (citations omitted); see also Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005) ("If a federal habeas petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted."); Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002); Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994) ("Normally, failure to raise a constitutional issue on direct appeal will bar raising the issue on collateral attack unless the defendant can show cause for the failure and actual prejudice."); Goldman v. Winn, 565 F.Supp.2d 200, 213-14 (D. Mass. 2008).

To establish cause, a petitioner must show "that some external impediment, such as government interference or the reasonable unavailability of the factual or legal basis for the claim, prevented it from being raised earlier." Andiarena v. United States, 967 F.2d 715, 718 (1st Cir. 1992). Prejudice occurs when an error has a "substantial and injurious effect or influence." Sustache-Rivera v. United States, 221 F.3d 8, 18 (1st Cir. 2000).

10

In addition, a showing of actual innocence can remedy a failure to raise a constitutional issue on direct appeal. See Bousley v. United States, 523 U.S. 614, 622 (1998).

D. Collateral Attack on Plea Agreement

"[A]s a general matter, a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014). As the Supreme Court wrote in Bousley, "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" 523 U.S. at 621 (quoting Reed v. Farley, 512 U.S. 339, 354 (1994). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784 (1979).

However, there are exceptions. For example, "a prisoner can collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." Wilkins, 754 F.3d at 28 (quoting Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006)); see also Castro v. United States, 272 F. Supp. 3d 268, 272 (D. Mass. 2017).

IV.    DISCUSSION

The grounds in the Petition fall into four categories: (1) ineffective assistance of counsel (Grounds 1-9); (2) failure to

11

disclose material exculpatory ("Brady") evidence (Ground 10); (3) newly discovered evidence (Ground 11); and (4) errors by the District Court at the plea and sentencing hearings (Grounds 12-16). See Dkt. Nos. 137, 139.

As indicated earlier, Burton is not entitled to a hearing on any of these claims, and they are all being denied.

### E. Ineffective Assistance of Counsel Claims

Burton's ineffective assistance claims concern his decision to plead guilty (Grounds 1-3) and the preparation for the presentation of his case for sentencing (Grounds 4-9).

### 1. Legal Standard

"To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, [a movant] must show both deficient performance by counsel and resulting prejudice." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687); see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "Addressing the prejudice prong prior to evaluating counsel's conduct is a permissible approach and even endorsed where more efficient." Gonzalez-Soberal v. United States, 244 F.3d at 273, 277-78 (1st Cir. 2001).

"The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). "In order to satisfy the 'deficient performance' prong, [a movant] must show that his trial counsel's representation 'fell below an objective standard of reasonableness.'" Peralta, 597 F.3d at 79 (quoting Strickland, 466 U.S. at 688). The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

As to the second prong, "[u]nder Strickland, a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Porter v. McCollum, 558 U.S. 30, 40 (2009) (quoting Strickland, 446 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Peralta, 597 F.3d at 79-80. The First Circuit has stated that "the 'prejudice' element of an ineffective assistance claim also presents a high hurdle. 'An error by counsel,

13

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Argencourt, 78 F.3d at 16.

### 2. Analysis

#### 1. Ground One

Ground 1 alleges that Burton's counsel was ineffective because he misinformed Burton that he could not withdraw his guilty plea "when, in fact, he could have for good reason." See Dkt. No. 139 at 7, 9-10; Dkt. No. 180 at 5. This ground to vacate is being dismissed because it is conclusively refuted by the record.

The record demonstrates that Burton's counsel did in fact advise him of his ability to withdraw his guilty plea before the sentencing hearing on December 22, 2014 because the government was abrogating the plea agreement. Burton asserts that from October 1, 2014 until December 16, 2014, Mr. Cruz erroneously advised him that he was unable to withdraw his guilty plea. However, even assuming, without finding, that assertion is true, Burton also states in his Memorandum in Support of the Petition that on December 17, 2014 -- five days before the sentencing hearing - Mr. Cruz informed him, correctly, that Burton retained the right to withdraw his plea and proceed to trial. See Dkt. No. 139 at 9-10. Burton had authorized Mr. Cruz to communicate information for him

to his fiancé Tiesha Gonzales.[3] The record includes an email from
Mr. Cruz to Gonzales explaining the option of withdrawing the plea,
and a response from Gonzales relaying Burton's intent not to
withdraw it. See Dkt. No. 208-1. Mr. Cruz also states that he
informed Burton of this right at that time. See Dkt. No. 208 (Cruz
Aff. 1) at 2. Therefore, whatever Mr. Cruz said prior to December
16, 2014, he properly informed Burton of his right to withdraw his
plea before the December 22, 2014. Burton had five days to consider
Mr. Cruz's accurate advice concerning the option of withdrawing
his plea. Even assuming, without finding, that Mr. Cruz told Burton
before December 17, 2014 that he could not withdraw his guilty
plea, Burton was not prejudiced by that advice.[4]

---

[3] Various pieces of evidence indicate that Gonzales was serving as
Burton's intermediary for information to and from him at the
relevant times. See Dkt. No. 139-1; Dkt. No. 146; Dkt. No. 149.

[4] If the government had not abrogated the plea agreement, it would
have been very difficult for Burton to withdraw his guilty plea.
See Fed. R. Civ. P. 11(d)(2)(B); United States v. Gates, 709 F.3d
58, 69 (1st Cir. 2013) (a court considering a motion to withdraw
a guilty plea must consider "whether the plea, when entered, was
voluntary, intelligent, and informed . . . [and] factors such as
the strength of the reasons proffered by the defendant as a basis
for withdrawing his plea, the timing of the motion, and the force
of any assertion of legal innocence"). Any assertion that Burton
was innocent would have been found to be false, rendering it very
unlikely that he would have been allowed to withdraw his plea.
Therefore, if Mr. Cruz initially told Burton this, he would have
been right rather than ineffective and Burton would not have been
prejudiced by Mr. Cruz's advice.

Moreover, during the Rule 11(c)(5) colloquy at the beginning of the December 22, 2014 hearing, the court informed Burton that because the court was rejecting the binding plea agreement, Burton had a right to withdraw his guilty plea. See Dec. 22, 2014 Tr. (Dkt. No. 173) at 7. Burton said he understood that he had that right and did not want to withdraw his plea. Id. He also stated that he had discussed this issue with Mr. Cruz and was fully satisfied with Mr. Cruz's work. Id. at 7-8.

In United States v. Butt, the First Circuit held that a presumption of truthfulness applies to statements made in the context of a guilty plea. See 731 F.2d 75, 80 (1st Cir. 1984). The presumption "will not be overcome unless the allegations in the §2255 Petition are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." Id.; see also United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003) ("Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea. They are more likely to be reliable than later versions prompted by second thoughts . . . ."). Here, the court's questioning of Burton at the beginning of the sentencing hearing regarding whether he wanted to withdraw his plea, and his responses, are subject to this presumption because they were, in

effect, part of Federal Rule of Criminal Procedure 11 plea colloquy. See Dec. 22, 2014 Tr. (Dkt. No. 173) at 4-9.

In essence, Burton's claim that Mr. Cruz did not tell him before the December 22, 2014 hearing that he could withdraw his plea is conclusively refuted by the record. Therefore, an evidentiary hearing is not justified on this issue. See McGill, 11 F.3d at 225. The court finds that Mr. Cruz's performance was not deficient and, in any event, Burton was not prejudiced by any purported deficiency. Therefore, Ground 1 is unmeritorious.

2. Grounds Two, Four, and Five

Grounds 2, 4, and 5 relate to Mr. Cruz's alleged failure to obtain particular purported records of Burton's company Pinnacle and of Burton's victims. More specifically, Ground 2 states that "Petitioner's plea was involuntary because his court-appointed attorney advised him to plead guilty without making any investigation or inspection of critical bank statements and or the actual Pinnacle Strategic Debt Portfolio and Ram 2020 Fund." Dkt. No. 137 at 4 of 16. Liberally construed, Burton's Memorandum in Support of his Petition seems to argue that such records would have shown that funds Burton had obtained to invest for clients, but used for his own personal expenses, were repaid in part to the victims. See Dkt. No. 139 at 10-15. Ground 5 also claims that the failure to obtain and investigate "the Pinnacle Strategic Debt

17

Portfolio and Ram 2020 Fund was ineffective assistance of counsel."
Dkt. No. 137 at 4 of 16.

Although the purported Pinnacle Strategic Debt Portfolio and
Ram 2020 Fund records would have been records of Burton's company,
he has not submitted them to the court. Nor has Burton proved that
they exist.

The bank records produced by the government during discovery
do not mention a Pinnacle Debt Portfolio or Ram 2020 Fund. See
Dkt. No. 212-1 at ¶4. In his affidavit, Mr. Cruz stated that "[a]s
to the 'Pinnacle Strategic Debt Portfolio' and the 'Ram 2020 Fund',
counsel to this day questions their very existence." See Cruz Aff.
1 (Dkt. No. 208) ¶11. While the record reveals the existence of
some funds with similar names -- funds which Burton told Mr. Cruz
he could use to repay certain clients - Mr. Cruz has stated that
no liquidation of those funds ever occurred at any point during
this case. See id. At the sentencing hearing, the court questioned
the existence of the Pinnacle Strategic Debt Portfolio. See Dec.
22, 2014 Tr. (Dkt. No. 173) at 33-34 (Court: "So what evidence do
I have that this debt portfolio exists?"; Mr. Cruz: "Your Honor,
the only evidence that the Court has at this point is the
representation I'm making.").

In addition, Burton has not proved that if the records exist,
they would show he repaid any of the money he misappropriated to
the victims. Two of them have provided affidavits denying they

18

were repaid. See Dkt. No. 212-1, Exs. 1, 3. There was substantial evidence to prove Burton's fraud on them. The court finds that Burton has made many false statements in this §2255 proceeding. Therefore, his contention that the purported "Pinnacle Strategic Debt Portfolio and Ram 2020 Fund" documents would show he repaid his victims is not credible.

In any event, it is axiomatic that "repayment is not a defense to fraud." United States v. Byrd, 690 F.App'x 892, 894 (6th Cir. 2017) (citation omitted). As the Fourth Circuit wrote with regard to wire fraud, "[t]he intent to repay eventually is irrelevant to the question of guilt for fraud." United States v. Allen, 491 F.3d 178, 186 (4th Cir. 2007) (citing United States v. Kenrick, 221 F.3d 19, 29 (1st Cir. 2000)). Therefore, Burton was not prejudiced by any failure to obtain purported records that allegedly would have shown he repaid his victims.

In addition, Mr. Cruz's decision not to seek the purported records was reasonable. In his affidavit, Mr. Cruz states that he already had access to Burton's bank records and those of Pinnacle. See Cruz Aff. 1 (Dkt. No. 208) ¶9. He reviewed those records and concluded that no repayments to victims were made. See id. Rather, his analysis of Burton's bank records "indicated that the monies Burton took from [certain victims] was not 'invested' as promised, but was deposited into Citibank accounts controlled by Mr. Burton and utilized by him to pay for personal and business expenses."

19

Id. In addition, as explained earlier, two of the four victims Burton claims he repaid submitted affidavits, signed before Burton's arrest, stating that they never received repayment from Burton. See Dkt. No. 212-1, Exs. 1, 3.

As Mr. Cruz was reasonable in deciding not to seek the purported Pinnacle Strategic Debt Portfolio and Ram 2020 Fund records, and Burton was not prejudiced by his decision not to do so, Grounds 2 and 5 are unmeritorious.

Ground 4 alleges that Mr. Cruz was ineffective because he did not obtain the bank records of the victims, which Burton contends would have been exculpatory because they would have shown he repaid them. However, the government has stated that it produced some such records -- the bank records of the Colemans -- in discovery in 2013 and 2014. See Dkt. No. 212-1. Mr. Cruz informed the government that he gave Burton copies of those records in 2015 and 2017 in connection with these proceedings. See Dkt. No. 219 at 2, n.1. The government has filed these records in these proceedings. See Dkt. No. 219, Exs. A, B. They do not appear to show any deposits from Burton or any of his businesses into the Colemans' accounts. Burton has not provided any additional records or attempted to show that the Colemans' records include any evidence he repaid his victims.

In any event, again, there is strong evidence that the victims were not repaid and, moreover, any repayment would not have negated

Burton's guilt. See Byrd, 690 F.App'x at 694; Allen, 491 F.3d at
186. Therefore, it was reasonable for Mr. Cruz not to obtain the
victims' records, or more of the victims' records, and Burton was
not prejudiced by their absence. Accordingly, Ground 4 also is
unmeritorious.

### 3. Ground Three

Burton's third claim is that his "guilty plea was involuntary
by reason of ineffective assistance of counsel because his counsel
breache[d] his duty to consult with petitioner on important
decisions, specifically, the preparation of defendant['s]
sentencing memorandum." Dkt. No. 139 at 7. Mr. Cruz, however,
states that he discussed Burton's proposals for the sentencing
memorandum with him in person on December 4, 2014. See Cruz Aff.
1 (Dkt. No. 208) ¶23.

This ground is only briefly mentioned in the Petition and not
developed in his Memorandum in Support of the Petition. See Dkt.
No. 137 at 4 of 16; Dkt. No. 139. The ground is also not discussed
in any of Burton's supplemental filings or replies. As indicated
earlier, in deciding whether the court must grant an evidentiary
hearing in a §2255 proceeding, the court "need not give weight to
conclusory allegations." See McGill, 11 F.3d at 225-26; see also
United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues
adverted to in a perfunctory manner, unaccompanied by some effort
at developed argumentation, are deemed waived."). Here, because

Mr. Cruz credibly states under oath that he discussed the sentencing memorandum with Burton and Burton provides no evidence to contradict this, the court deems this ground to be merely conclusory and, in any event, without any basis in fact. Accordingly, it is unmeritorious.

4. Ground Six

Burton's sixth ground to vacate is that his counsel "fail[ed] to read and discuss the presentence report" with him. See Dkt. No. 137 at 4 of 16; Dkt. No. 139 at 15-16. This ground, too, is conclusively refuted by the record.

In his affidavit, Mr. Cruz states that he had reviewed the Presentence Report with Burton and discussed potential objections with him. See Cruz Aff. 1 (Dkt. No. 208) ¶13. The record demonstrates this is true. It includes an October 9, 2014 email from Mr. Cruz to Burton containing the Presentence Report, and an email response by Burton to Mr. Cruz, in which they discuss various potential objections to it. See Dkt. No. 208-1 at 34, 36. Burton's response to Mr. Cruz is dated December 8, 2014, and contains various specific objections to the Presentence Report, demonstrating that he received the document sent to him by Mr. Cruz. At the December 22, 2014 hearing, Burton testified that he had reviewed the Presentence Report and found it to be accurate. See Dec. 22, 2014 Tr. (Dkt. No. 172) at 8. Therefore, the alleged

facts concerning Ground Six are conclusively refuted by the record. Accordingly, it is unmeritorious.

### 5. Ground Seven

Burton's seventh claim is that his counsel "fail[ed] to object to substantive and factual allegations in the presentence report." In his Memorandum in Support of the Petition, Burton briefly states that "he had no fewer than thirty (30) objections" including "objections such as the offense level, the loss amount, the investment advisor enhancement, his criminal history category and his alcohol abuse." See Dkt. No. 139 at 16.

This claim is also unmeritorious. Burton did send an email to Mr. Cruz on December 8, 2014, with seven, not thirty, proposed objections to the Presentence Report. See Dkt. No. 208-1 at 36-37. However, at the sentencing hearing on December 22, 2014, after Burton was sworn he stated that he was fully satisfied with Mr. Cruz's work as his lawyer. See Dec. 22, 2014 Tr. (Dkt. No. 173) at 6-8. The court then asked Burton if there was anything in the Presentence Report he thought was inaccurate, and Burton responded, "No, your Honor." Id. at 9. There was no impediment to Burton stating that he had objections to the Presentence Report on December 22, 2014.

As indicated earlier, there is a presumption of truthfulness to statements previously made under oath. See Butt, 731 F.2d at 80. A petitioner must provide a valid, credible reason why they

should be found to be untrue in a §2255 Petition. See Padilla-Galenza, 357 F.3d at 598. Burton has not done so here. Therefore, the court finds that by the time of the sentencing hearing on December 22, 2014, Burton understood that the objections he had proposed to Mr. Cruz were not meritorious.

The court credits Mr. Cruz's explanation for this evolution in Burton's position. See Cruz Aff. (Dkt. No. 208) at 6-9. More specifically, Mr. Cruz discussed Burton's proposed objections with Burton several times before the sentencing hearing on December 22, 2014, and explained why they were unfounded. Id. By the time of the sentencing hearing on December 22, 2014, Burton understood and, the court finds, agreed that the objections he originally proposed would have been futile and should not be made.

Mr. Cruz's decision not to raise the objections originally suggested by Burton was not objectively unreasonable, and Burton was not prejudiced by it. There was ample evidence that Burton had acted as an investment adviser and to support the amount of the loss attributed to him in the Presentence Report. Indeed, as Mr. Cruz explained, Burton had agreed, under oath, to both in pleading guilty. See Cruz Aff. 1 (Dkt. No. 208) at ¶¶16-18.

Similarly, Burton was under a criminal justice sentence while he engaged in the criminal conduct in this case. Any argument to the contrary would have been unavailing. Instead, Mr. Cruz reasonably chose to argue instead that Burton's Criminal History

24

category of II overstated the nature of his criminal history. <u>See</u> Dec. 22, 2014 Tr. (Dkt. No. 173) at 29.

In addition, it was reasonable for Mr. Cruz not to raise objections to the references in the Presentence Report to domestic abuse. This information did not affect Burton's Criminal History score. An objection would have spotlighted the allegations of abuse and been potentially harmful to Burton's effort to seek a lower sentence. Mr. Cruz discussed this with Burton and he agreed the issue should not be raised. <u>See</u> Cruz Aff. 1 (Dkt. No. 208) ¶¶19-20.

In view of the foregoing, again, Mr. Cruz's decisions were reasonable and Burton was not prejudiced by them. Therefore, Ground 7 is unmeritorious.

### 6. Ground Eight

Burton's eighth claim is that Mr. Cruz was ineffective because he did not withdraw as counsel after receiving negative information about Burton from his third-party custodian Bryan Ganz. However, Mr. Cruz's affidavit, supported by documentary evidence, credibly refutes this contention.

After Burton was detained a second time, Ganz told Mr. Cruz that he would not continue to serve as custodian if Burton was again released and would not lend him money to pay partial restitution because Burton had made unauthorized personal charges on the credit card of a business Ganz and Burton owned, and Burton

had started a competing business. See Cruz Aff. 1 (Dkt. No. 208)
¶¶26-33. Ganz had not given this information to Probation. Id. Mr.
Cruz advised Burton not to raise this dispute at sentencing because
it too would have been detrimental to Burton's effort to get a
lower sentence. Id. Mr. Cruz did, however, inform Burton that if
the issue were raised, Mr. Cruz would be a potential witness
concerning Ganz's claims, which might have required his withdrawal
as Burton's counsel. Id. Mr. Cruz discussed with the prosecutor
Ganz's allegation that Burton had misused a credit card. Id. She
agreed not to raise the issue at sentencing, id., and did not. Mr.
Cruz explained to Burton that the prosecutor would not raise issues
relating to Ganz. Id. Burton indicated that he wanted Mr. Cruz to
continue to represent him at sentencing. Id.

It was not only reasonable, it was wise for Mr. Cruz not to
introduce Burton's dispute with Ganz at sentencing. Doing so could
have caused the court to conclude that Burton was committing crimes
while awaiting sentencing and to give him a higher sentence.

In these circumstances, Mr. Cruz did not have an actual
conflict of interest that adversely affected his performance as is
required to obtain §2255 relief based on an alleged violation of
the Sixth Amendment. See Cuyler v. Sullivan, 446 U.S. 335, 348-49
(1980). As the First Circuit has explained:

> [T]o show an actual conflict of interest, a
> defendant must demonstrate "that (1) the
> lawyer could have pursued a plausible

> alternative defense strategy or tactic and (2)
> the alternative strategy or tactic was
> inherently in conflict with or not undertaken
> due to the attorney's other interests or
> loyalties.

United States v. Ponzo, 853 F.3d 558, 575 (1st Cir. 2017) (internal

quotation omitted). In contrast to Cuyler, this is not a case in

which one attorney represented multiple defendants with

conflicting interests. Mr. Cruz had no reason to be loyal to Ganz

and, therefore, no conflict of interest. While Mr. Cruz could have

argued that Burton failed to make partial restitution before

sentencing because Ganz was no longer willing to lend him money,

as explained earlier, this argument would have done Burton more

harm than good. As the First Circuit wrote in Ponzo, "foregoing an

implausible strategy or a strategy that could inculpate the

defendant does not constitute an actual conflict of interest." Id.

at 576.

In essence, Mr. Cruz did not have a conflict of interest

relating to Ganz or the information he received from Ganz. He

zealously and successfully worked to protect Burton from the

potential adverse impact his dispute with Ganz could have had on

Burton's sentence. Burton knew and agreed with this reasonable

strategy in 2014. He was not prejudiced by it. Therefore, Burton

is not entitled to relief on Ground 8.

7. <u>Ground Nine</u>

Burton's ninth and last ineffective assistance of counsel claim is Mr. Cruz's alleged failure to review any discovery and interview any potential witnesses. In particular, Burton maintains he provided Mr. Cruz with a list of former clients of Pinnacle who Mr. Cruz did not pursue. <u>See</u> Dkt. No. 139 at 20.

In his memorandum in support of the Petition and subsequent submissions, Burton fails to provide any explanation or evidentiary support for this argument. He asserts that "it is unfathomable that a lawyer would or could advise, recommend and negotiate a plea agreement without ever interviewing and investigating potential trial witnesses favorable to his client." <u>Id.</u> at 20.

Here, not only is Burton's conclusory claim unsupported, but much evidence in the record demonstrates that Mr. Cruz did, in fact, investigate the potential witnesses. In his affidavit, Mr. Cruz discusses "[t]he discovery received and reviewed by counsel regarding Mr. Burton's and Pinnacle's bank records." <u>See</u> Cruz Aff. 1 (Dkt. No. 208) ¶9. Mr. Cruz also states that he spoke with various potential witnesses. <u>See</u> <u>id.</u> ¶41. In addition, the record also contains emails between Mr. Cruz and Gonzales, in which Mr. Cruz states that he had spoken to, or would call, many of the witnesses Burton claims were not contacted. <u>See</u> Dkt. No. 208-1 at 73-75.

As Burton's conclusory contentions concerning Ground 9 are refuted by Mr. Cruz's affidavit, which is supported by many documents, the court finds that they are not proven. See United States v. LaBonte, 70 F.3d 1396, 1412 (1st Cir. 1995), rev'd on other grounds, 520 U.S. 751 (1997); McGill, 11 F.3d at 225-26. Therefore, Ground 9 is unmeritorious.

### F. Burton's Other Grounds For Relief

In Grounds 10 to 16, Burton seeks relief for reasons other than ineffective assistance of counsel. Each of these grounds have been procedurally defaulted and no exceptions to the procedural default rule apples. They are also each unsupported factually and unmeritorious. Therefore, they are being dismissed.

In Grounds 10 to 16, Burton alleges that: the government failed to disclose material exculpatory evidence (10); there is newly discovered evidence (11); and there were errors by the court concerning his plea and sentencing (12-16). With regard to the merits, Burton's claims are either contradicted by the record or inherently incredible. See McGill, 11 F.3d at 225-26. For example, contrary to Burton's contention, on August 21, 2014 the court informed Burton of the maximum possible penalties if he pled guilty. See Aug. 21, 2014 Tr. (Dkt. No. 172) at 8-9. Similarly, at

the sentencing hearing Burton confirmed that he had read the Presentence Report.[5] See Dec. 22, 2014 Tr. at 9.

In any event, claims 10 to 16 are procedurally defaulted. All of them could have been pursued on appeal but were not.[6] See Bousley, 523 U.S. at 621; Wilkins, 754 F.3d at 28. With regard to his plea, Burton cites no new evidence that would have been unavailable on appeal. With regard to his sentencing, Burton was informed that he could appeal the court's upward departure. See Dec. 22, 2014 Tr. (Dkt. No. 173) at 40.

Burton has not shown cause for his default because he has not proven any of his ineffective assistance of counsel claims. See Prou v. United States, 199 F.3d 37, 47 (1st Cir. 1999); Martinez v. Ryan, 566 U.S. 1, 9 (2012); United States v. Sampson, 820 F.Supp.2d 202, 221 (D. Mass. 2011). Nor has he shown any other reason his claims could not have been properly raised on appeal.

---

[5] The court did not ask Burton if he had discussed the Presentence Report with Mr. Cruz. Mr. Cruz credibly explains in his affidavit his extensive discussions with Burton concerning the Presentence Report. See Dkt. No. 2018 at 7-9. There is no reasonable probability that Burton's sentence would have been different if the court had asked if he had discussed the Presentence Report with Mr. Cruz. See, e.g., Bartolomeo v. United States, 960 F.3d 34, 43 (1st Cir. 2020).

[6] While Burton did file an appeal, it was untimely. See Dkt. No. 131. He later moved to dismiss it. See United States v. Burton, 15-1578, Doc. No. 00116862947 (July 15, 2015). The First Circuit then dismissed the appeal. See Dkt. No. 151.

See Andiarena, 967 F.2d 715, 718 (1st Cir. 1992). Moreover, the court does not find that Burton was actually innocent of the crimes to which he pled guilty. This is not a case in which "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 554 (2006). Burton's guilty plea contributes to the conclusion that he is not actually innocent. See United States v. Dunfee, 821 F.3d 120, 127-31 (1st Cir. 2016). In this case, Burton pled guilty for good reason -- the evidence against him was very strong.

Therefore, Grounds 10 to 16 are being dismissed as procedurally defaulted and, in any event, are without merit.

V. DISCOVERY MOTIONS

On May 7, 2015, Burton filed a motion seeking discovery from the Federal Public Defender and government of "[a]ll evidence, attorney-client work product, and all discovery and provide to appellant relating to criminal docket number [15-11826]." Dkt. No. 130. On July 10, 2015, he filed motions to compel discovery from the Federal Public Defender and from the government. Dkt. Nos. 142, 143. From the Federal Public Defender, among other things, Burton sought various documents relating to Mr. Cruz's representation of him. From the government, among other things, he sought bank account information regarding the victims.

Finally, on August 30, 2017, Burton filed a discovery motion claiming that neither the government nor Mr. Cruz provided Burton with the bank statements of the Colemans that he requested, and seeking "any further discovery it has omitted, withheld, hidden, either intentionally or unintentionally." Dkt. No. 215.

All of these requests are being denied. A petitioner seeking relief under 28 U.S.C. §2255 must establish "good cause" for discovery. See, e.g., U.S. v. Moran, 19 F.3d 1427 (1st Cir. 2014); Dziurgot v. U.S., 923 F.2d 839 (1st Cir. 1990). For most of his discovery requests, Burton has failed to state any reason, let alone the requisite "good cause," for discovery. See generally Dkt. Nos. 130, 142, 143.

In his August 30, 2017 Motion, Burton asserts (in Dkt. No. 215) that discovery of the Coleman bank records is warranted because they were not included in the documents Mr. Cruz provided to Burton pursuant to the May 18, 2017 Order (Dkt. No. 203) directing Mr. Cruz to "disclose to Burton and counsel for the United States all correspondence, notes, memoranda, and other communications, documents, and information reasonably necessary to respond" to the Petition. The government obtained some of the Coleman bank records and provided them to Mr. Cruz during discovery in 2013 and 2014. See Dkt. No. 212-1. The government has stated that Mr. Cruz informed the government that he had provided Burton with copies of those records in December 2015 and August 2017. See

Dkt. No. 219 at 2, n.1. Burton's contention that he did not receive the Coleman bank records in these proceedings is, therefore, refuted by the record. In any event, as explained earlier, Mr. Cruz was not ineffective in part in not seeking additional bank statements from victims because the evidence of purported repayment Burton sought would not be exculpatory. See Byrd, 690 F.App'x at 694. Therefore, any further discovery of the Coleman bank records would be futile.

As Burton has failed to establish good cause for discovery, the discovery motions are being denied.

VI.   EVIDENTIARY HEARING

Burton requested an evidentiary hearing on the claims for relief raised in the Petition. See Dkt. No. 139 at 27.

As explained earlier, "a '§2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" McGill, 11 F.3d at 226 (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir.1984)). Burton's claims are all either facially inadequate, procedurally defaulted, or contradicted conclusively by the record. An evidentiary hearing is not in this case necessary or appropriate.

33

Therefore, the court is denying all of the grounds for relief of the Petition without an evidentiary hearing.

VII.    CERTIFICATE OF APPEALABILITY

The court is required to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." See Rules Governing §2255 Proceedings, Rule 11(a). A certificate of appealability ("COA") is warranted if "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A claim can be debatable "even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. However, the "issuance of a COA must not be pro forma or a matter of course," because "Congress [has] confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not." Id. at 337.

The claims asserted in the §2255 Petition are all either facially inadequate, procedurally inadequate, or contradicted conclusively by the record. Accordingly, the court does not find that reasonable jurists could find its assessment of Burton's claims debatable or wrong. See id. at 338. A COA is, therefore, being denied as to all claims. However, Burton may seek a COA from

34

the First Circuit Court of Appeals. See Rules Governing §2255 Proceedings, Rule 11(a).

    VIII.   ORDER

    In view of the foregoing, it is hereby ORDERED that:

    1.   The defendant's Motion to Vacate Under 28 U.S.C. §2255 (Dkt. No. 132) and Amended Motion to Vacate under 28 U.S.C. §2255 (Dkt. No. 137) are DENIED.

    2.   The government's motion for leave to file responsive briefing and sealed exhibits (Dkt. No. 218) is ALLOWED.

    3.   The defendant's motions related to discovery (Dkt. Nos. 130, 142, 143, 215) are DENIED.

    4.   The government's motion for leave to file excess pages (Dkt. No. 211) is ALLOWED.

    5.   The defendant's motion for release or bail pending resolution of the §2255 petition (Dkt. No. 199) is MOOT.

    6.   Oscar Cruz's motion for extension of time to file an affidavit (Dkt. No. 207) is ALLOWED.

    7.   The government's motion for extension of time to file a response to the motion to vacate (Dkt. No. 127) is ALLOWED.


UNITED STATES DISTRICT JUDGE